WILLIAM F. CONKLIN, Plaintiff-Appellee, v. GEORGE RYAN, Secretary of State, Defendant-Appellant.

Fourth District   No. 4—92—0470

Opinion filed March 18, 1993.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and John P. Schmidt, Assistant Attorney General, of Chicago, of counsel), for appellant.

Norvan E. Adams and Richard T. Adams, both of Fairview Heights, for appellee.

JUSTICE COOK delivered the opinion of the court:

Plaintiff William F. Conklin filed a petition with defendant Secretary of State (Secretary) requesting a restricted driving permit (RDP) (Ill. Rev. Stat. 1991, ch. 95½, par. 6—205(c)). The Secretary denied the petition. On administrative review, the circuit court of Sangamon County reversed the Secretary's decision. We reverse the circuit court and reinstate the Secretary's decision.

On January 20, 1986, plaintiff was arrested for driving under the influence of alcohol (DUI) (Ill. Rev. Stat. 1991, ch. 95½, par. 11—501(a)), after a breathalyzer test administered to him indicated a blood-alcohol concentration of .26. Plaintiff received a statutory summary suspension, and was convicted and received court supervision. Five years later, on January 25, 1991, plaintiff was involved in an automobile accident and again charged with DUI. The arresting officer's sworn report, written at 1:30 a.m. on January 26, states that plaintiff refused to submit to a chemical test to determine alcohol or drug concentration. The report also states that plaintiff exhibited "slurred speech/odor of alcoholic beverage on breath/bloodshot, glassy eyes/ failed sobriety tests/unsure sense of balance." Plaintiff was immediately hospitalized after the accident at Memorial Hospital in Belleville. He suffered several broken ribs and bruising about his body. Plaintiff contends he also suffered a concussion but his hospital records contain no support for that claim. A registered nurse filling out plaintiff's admission report at 5:15 a.m. on January 26 wrote "yes" in the space regarding plaintiff's "Alcohol/Drug Use" and wrote "[h]as been drinking" in the comments section.

A jury found plaintiff guilty of failure to yield the right-of-way but not guilty of DUI. Still, plaintiff's arrest for DUI automatically resulted in the statutory summary suspension of his driver's license for

a two-year period commencing March 26, 1991. Plaintiff requested a hearing with the Secretary's office to obtain an RDP to drive to and from work.

Section 6—205(c) of the Illinois Vehicle Code (Code) provides for RDPs to be issued as follows:

"[T]he Secretary of State in his discretion, without regard to whether such recommendation is made by the court, may, if application is made therefor, issue to such person a restricted driving permit granting the privilege of driving a motor vehicle between the petitioner's residence and petitioner's place of employment or within the scope of the petitioner's employment[-] related duties ***; if the petitioner is able to demonstrate that no alternative means of transportation is reasonably available and the petitioner will not endanger the public safety or welfare; provided that the Secretary's discretion shall be limited to cases where undue hardship would result from a failure to issue such restricted driving permit." Ill. Rev. Stat. 1991, ch. 95½, par. 6—205(c).

■ The Secretary has enacted regulations which establish standards for issuing RDPs; those regulations have the force and effect of law. (See 92 Ill. Adm. Code §1001.400 *et seq.* (1991); *Youle v. Edgar* (1988), 172 Ill. App. 3d 498, 503-04, 526 N.E.2d 894, 898.) All those applying for an RDP must submit an alcohol and drug evaluation. (92 Ill. Adm. Code §1001.440(a) (1991).) Such applicants are evaluated as "Level I—Non-Problematic (Minimal Risk)," "Level II—Problematic Use (Moderate Risk)," "Level II—Problematic Use (Significant Risk)," or "Level III—Problematic Use Dependent (High Risk)." (See 77 Ill. Adm. Code §2056.310; 92 Ill. Adm. Code §1001.410 (1991).) "Level III—Problematic Use Dependent (High Risk)" is defined as "the classification resulting from an alcohol and drug evaluation assigned to an Applicant with symptoms of alcohol and/or drug dependence." (92 Ill. Adm. Code §1001.410, at 6352 (1991).) To be eligible for an RDP, the following is required for applicants classified as Level III:

"Applicants classified as Problematic Use, Dependent (Level III) must document [(1)] abstinence as required in subsection (e) below; [(2)] the completion of treatment provided by a facility or facilitator licensed by DASA or the Illinois Department of Public Health; [(3)] the establishment of an ongoing support/recovery program; and [(4)] the completion of any additional treatment recommendations of his/her evaluator." 92 Ill. Adm. Code §1001.440(b)(3), at 6359 (1991).

Plaintiff was evaluated by DUI supervisor Joseph Shaffer through Treatment Alternatives for Special Clients (TASC). Shaffer first assessed plaintiff after his DUI conviction in 1986. At that time, Shaffer noted that plaintiff had been prescribed tranquilizers for five years prior to his 1986 DUI arrest and in 1985 had been told by his doctor to abstain from alcohol due to an ulcer. Shaffer stated that plaintiff "reported minimal drinking over the eight years *preceding* 1985, but noted plaintiff's claim seemed inconsistent with the high tolerance demonstrated by plaintiff's statement that he felt no significant intoxication at a blood[-]alcohol level of .26 *** (consumption of well over twelve drinks in seven hours)."

In Shaffer's April 8, 1991, evaluation plaintiff stated that since his first DUI in 1986, his only consumption of alcohol consisted of one glass of champagne at a wedding in 1990. Plaintiff's fiancee, who is also plaintiff's ex-wife and has known him for many years, told Shaffer that plaintiff "may drink once or twice per month." She was uncertain of plaintiff's use generally but said she "could not recall him ever consuming more than five beers more [*sic*] in one night." She also stated that plaintiff still may be taking his "nerve pills." Shaffer concluded that plaintiff's "denial of use in this incident is not consistent with an arrest for DUI. *** He denies there is any problem now. Alcohol dependency seems likely." Shaffer placed plaintiff in the category of "Level II—Problematic Use (Significant Risk)." After reviewing copies of plaintiff's 1986 TASC evaluation, Shaffer amended his findings in an addendum to his evaluation dated April 11, 1991, and placed plaintiff in the category of "Level III—Problematic Use Dependent (High Risk)," with a recommendation for outpatient treatment. This evaluation was introduced into evidence at the RDP hearing.

At the RDP hearing plaintiff testified he consumed no alcohol or medication during the evening of his second DUI arrest in January 1991. Plaintiff said he remembers nothing about the accident except the car skidding, after which he woke up in the hospital. Plaintiff does not recall the officer giving him field-sobriety tests and stated that to his knowledge, he was not offered a breathalyzer test. He testified that his doctor, Gerardo Guerra, said plaintiff had not been drinking that night.

The hearing officer concluded that plaintiff had carried his burden of proving he was addressing his alcohol problem and maintaining abstinence. Remarkably, the hearing officer found plaintiff was participating in self-help or other programs to support continued abstinence, although there was no support in the record for such a conclusion. He recommended plaintiff be granted an RDP for 12 months to drive to

and from his work in Mt. Vernon, which is 60 miles from his home. Although the Secretary's form order (erroneously) states that the Secretary accepted the hearing officer's findings and conclusions of law, the Secretary reversed the hearing officer. The Secretary noted that plaintiff, having been evaluated as a Level III, was not eligible for an RDP since he failed to present evidence showing that his recommended treatment had been completed or waived and also failed to present evidence of an established, ongoing support system to help maintain abstinence from alcohol as required in the Secretary's regulations for Level III alcoholics. (See 92 Ill. Adm. Code §1001.440(b)(3) (1991).) The Secretary denied the application for an RDP because plaintiff failed to present such evidence. In the administrative review action, the circuit court stated in an order dated May 6, 1992, that the Secretary's order was against the manifest weight of the evidence and that the Secretary was directed to issue plaintiff the RDP. The Secretary filed a timely appeal.

Plaintiff now contends the TASC evaluation had no probative value because it was incomplete, inaccurate and inconsistent. Thus, plaintiff argues, he was not required to fulfill the Level III requirements since he had abstained from alcohol since his 1986 conviction and should not have been rated at Level III by the evaluator in the first place. As support of his claims of abstinence, plaintiff submitted three letters from two friends and a co-worker who attested they had never seen plaintiff indulge in any form of alcohol during the years of their acquaintance with him. Plaintiff also submitted a letter from Dr. Guerra which stated that he saw plaintiff the morning after the accident at the hospital and "saw no evidence of alcohol intoxication." Dr. Guerra's letter noted that "[n]othing was stated in the emergency room report about Mr. Conklin having alcoholic breath or a denial of a blood test."

The Secretary counters that if plaintiff was dissatisfied with the evaluation it was his obligation to seek an evaluation from a different individual and submit it to the hearing officer in addition. We agree. Although plaintiff supplied some proof of abstinence, not just after the 1991 arrest but even before, the record indicates he has failed to complete the outpatient treatment recommended by Shaffer or participate in any type of ongoing support program. Plaintiff's claims of abstinence do not negate his responsibility to fulfill the other Level III requirements. A person who seeks restoration of his driving privileges has the burden of establishing his entitlement to restored driving privileges by clear and convincing evidence. (*Sutton v. Edgar* (1986), 147 Ill. App. 3d 723, 730, 498 N.E.2d 295, 300.) Plain-

tiff presented Shaffer's evaluation to the hearing officer at the August 1991 hearing. It was plaintiff's responsibility to resolve his concerns as to the April 1991 evaluation with Shaffer before submitting it, or secure a different evaluation to submit to the hearing officer if he was unhappy with Shaffer's, and it was insufficient for him to simply attack his evaluation when he failed to fulfill the requirements of a Level III problematic user. As this court has stated:

"It is abundantly clear that the Secretary has adopted a program designed to remove intoxicated drivers from Illinois roads and highways. Part of that program is to demand that problematic users of alcohol prove they have a support system that makes them deal with their problem. In light of the carnage on our highways that stems directly from the abuse of alcohol, such regulations are reasonable." (*Youle*, 172 Ill. App. 3d at 504, 526 N.E.2d at 898.)

Given plaintiff's failure to present evidence of compliance with the Secretary's regulations, we find the circuit court erroneously reversed the order of the Secretary.

Further, the Secretary's decision was not against the manifest weight of the evidence. On judicial review, the findings and conclusions of the administrative agency on questions of fact are considered to be *prima facie* true and correct. (*Youle*, 172 Ill. App. 3d at 503, 526 N.E.2d at 897; *Murdy v. Edgar* (1984), 103 Ill. 2d 384, 391, 469 N.E.2d 1085, 1088.) A court may not overturn an administrative decision unless the authority of the administrative body was exercised in an arbitrary or capricious manner or the decision is against the manifest weight of the evidence. (*Murdy*, 103 Ill. 2d at 391, 469 N.E.2d at 1088.) A reviewing court does not reweigh the evidence or make an independent review of the facts, but rather its function is to ascertain whether the final decision of the administrative body is just and reasonable in light of the evidence presented. (*Christiansen v. Edgar* (1991), 209 Ill. App. 3d 36, 43, 567 N.E.2d 696, 700.) If the record contains any evidence which fairly supports the agency's decision, such decision is not against the manifest weight of the evidence and must be sustained upon review. (*Christiansen*, 209 Ill. App. 3d at 43, 567 N.E.2d at 700.) In order for the circuit court to find the Secretary's decision is against the manifest weight of the evidence, the circuit court must determine, after viewing the evidence in the light most favorable to the Secretary, that no rational trier of fact could have agreed with the Secretary's finding. *Agans v. Edgar* (1986), 142 Ill. App. 3d 1087, 1094, 492 N.E.2d 929, 933-34; see also *Christiansen*, 209 Ill. App. 3d at 43, 567 N.E.2d at 700.

Plaintiff argues that Shaffer's evaluation contained factual errors and hearsay. As stated previously, plaintiff may not simply evade the requirements of the Secretary's regulations by undermining the value of the evaluation. On the issue of hearsay, plaintiff complains of several such statements by his fiancee/ex-wife which were included in the evaluation. However, the regulations for such hearings provide that "[t]he technical rules of evidence shall not apply. Any relevant evidence may be admitted if it is the sort of evidence relied upon by reasonably prudent people in the conduct of their affairs." (92 Ill. Adm. Code §1001.100(c), at 6332 (1991).) Plaintiff contends his ex-wife's comments contained obvious bias; however, the facts indicate she is now his fiancee, so it would seem logical that any bias would be in favor of plaintiff. Regardless, we find these comments were both relevant and reliable and thus admissible as evidence.

Plaintiff also contends the evaluation contains improper presumptions of his guilt of the 1991 DUI charge. Plaintiff criticizes the Secretary's reliance on Shaffer's 1991 evaluation in that it refers to plaintiff's 1986 DUI conviction and evaluation. However, this information is clearly pertinent to an evaluation of plaintiff's request for an RDP. The regulations state that arrests occurring in the years prior to the current RDP hearing may be relevant to determine whether an applicant has met his burden of proof. (92 Ill. Adm. Code §1001.440(d) (1991).) Plaintiff's breathalyzer test in 1986 indicated a blood-alcohol content of .26, yet plaintiff stated he felt no effect from the alcohol he consumed that night. As Shaffer concluded, this indicates a high tolerance to alcohol which casts considerable doubt on plaintiff's claim that he drank only minimally in the years preceding the accident. This arrest also occurred after plaintiff's doctor had ordered him not to drink alcohol at all due to an ulcer. Such evidence was also relevant and reliable.

Moreover, the evidence from the current arrest indicates plaintiff suffers from continuing alcohol problems. Although plaintiff maintains he drank nothing on the night of his 1991 accident, a police officer at the accident scene reported that plaintiff appeared intoxicated and refused a breathalyzer test. A registered nurse in the emergency room where plaintiff was taken directly after the accident noted in her report that he had been drinking. Although plaintiff presented a letter from Dr. Guerra stating that he saw plaintiff in the hospital and found no signs of intoxication, the letter clearly indicates that Guerra did not see plaintiff until the morning after the accident when most signs of intoxication from the night before would have dissipated. Further, plaintiff states in his 1991 evaluation that he has had only

one drink since his 1986 DUI conviction. This contradicts his fiancee's statement that plaintiff "may drink once or twice a month" and that she had never seen him drink more than five beers in one night.

Plaintiff is also critical of Shaffer's statement that plaintiff's "denial of use in this incident is not consistent with an arrest for DUI." Plaintiff further contends that, although a DUI is a criminal proceeding and a statutory summary suspension is a proceeding which is civil in nature, "the two are inextricably interwoven," and his acquittal of the criminal DUI charge should be given some weight. We agree plaintiff's acquittal has some relevance to this inquiry. However, we take issue with plaintiff's contention that when he was found not guilty of the DUI charge, his duty to obtain any further alcoholic treatment or evaluation ended. Statutory summary suspension of a person's driver's license under the provisions of section 11—501.1 of the Code (Ill. Rev. Stat. 1991, ch. 95½, par. 11—501.1) is an administrative function of the Secretary which operates without regard to the resolution of the companion DUI case. (*People v. Schuld* (1988), 175 Ill. App. 3d 272, 284, 529 N.E.2d 800, 807; *People v. Furness* (1988), 172 Ill. App. 3d 845, 849, 526 N.E.2d 947, 949 (valid summary suspension does not require conviction of DUI).) A summary suspension hearing is a civil action designed, not to punish the driver, but to protect those traveling the State's highways (*Furness*, 172 Ill. App. 3d at 849, 526 N.E.2d at 949), and the relevant inquiry before issuing an RDP is the danger to the public safety and welfare (Ill. Rev. Stat. 1991, ch. 95½, par. 6—206(c)(3); *Murdy*, 103 Ill. 2d at 392, 469 N.E.2d at 1089). Plaintiff's acquittal of DUI did not require the Secretary to issue an RDP.

Plaintiff alleges that it is up to the hearing officer (who ruled in his favor) to determine the probative value of the evidence since he is in the best position to assess credibility. It is true that a hearing officer who saw and heard the witnesses is in a good position to judge credibility. However, unlike an appellate court that reviews factual findings of a trial court, an administrative body such as that under the Secretary is not bound by the findings of its hearing officer. (*Caracci v. Edgar* (1987), 160 Ill. App. 3d 892, 896, 513 N.E.2d 932, 935.) Rather, the issuance of RDPs is entrusted to the Secretary, whose determination will not be reversed unless it is arbitrary or capricious. (*Caracci*, 160 Ill. App. 3d at 896, 513 N.E.2d at 935.) We find the Secretary's decision was correct based on the fact that defendant failed to fulfill the requirements for Level III alcoholics under section 1001.440(b)(3) of title 92 of the Illinois Administrative Code. 92 Ill. Adm. Code §1001.440(b)(3) (1991).

In addition, the rules of the Secretary provide that the applicant's total driving record is a factor to be considered in determining the propriety of granting a petitioner an RDP. (92 Ill. Adm. Code §1001.420(d), at 6355 (1991).) Plaintiff here possessed a number of infractions on his driving record in addition to the two DUI arrests. We find it was proper for the Secretary to consider plaintiff's entire driving record and conclude that the Secretary's decision was not against the manifest weight of the evidence.

Accordingly, we reverse the order of the circuit court of Sangamon County directing the Secretary to grant an RDP to the plaintiff, and reinstate the Secretary's decision.

Reversed; decision of the Secretary of State reinstated.

McCULLOUGH and LUND, JJ., concur.