JOHN R. JENNINGS, Plaintiff-Appellant, v. JESSE WHITE, Secretary of State of the State of Illinois, Defendant-Appellee.

Fourth District    No. 4—04—1016

Opinion filed December 2, 2005.

638

Ronald E. Boyer, of Ronald E. Boyer, P.C., of Watseka, for appellant.

Lisa Madigan, Attorney General, of Chicago (Gary S. Feinerman, Solicitor General, and Mary Patricia Kerns, Assistant Attorney General, of counsel), for appellee.

JUSTICE KNECHT delivered the opinion of the court:

In April 2000, plaintiff, John R. Jennings, applied to the Secretary of State (Secretary) for a restricted driving permit (RDP). The Secretary denied this petition. Jennings appealed to the Sangamon County circuit court, which, in September 2001, found Jennings "would be a safe and responsible driver" and ordered the Secretary to issue Jennings an RDP.

In April 2003, before his RDP expired, Jennings petitioned the Secretary *pro se* for full reinstatement of his driving privileges. The Secretary, in June 2003, denied his request. Later, Jennings petitioned the circuit court for administrative review. The court denied his petition.

Jennings appealed. On appeal, Jennings argues the circuit court erred by (1) finding the Secretary properly refused to issue Jennings an RDP; (2) affirming the Secretary's decision when the court had found him a safe and responsible driver in September 2001; (3) allowing the Secretary to supplement the record on administrative review; and (4) approving the Secretary's consideration of an invalid arrest for driving under the influence (DUI). We affirm.

## I. BACKGROUND

Jennings had a history of alcohol-related traffic offenses beginning in April 1984 when he was arrested for illegal transportation of alcohol. In November 1988 and May 1993, Jennings was arrested for DUI. Following both arrests, Jennings refused to submit to a Breathalyzer test and his driving privileges were summarily suspended. Jennings's driving privileges were revoked on October 6, 1993. In June 2000, the Secretary denied plaintiff's request for reinstatement of his driving privileges or, in the alternative, an RDP. Jennings petitioned the circuit court for administrative review. While his appeal to the circuit court was pending, Jennings, in February 2001, was arrested for DUI. In April 2001, the circuit court of Iroquois County rescinded Jennings's later statutory summary suspension upon finding "No Reasonable Grounds."

In September 2001, the circuit court of Sangamon County ordered the Secretary to issue Jennings an RDP after finding Jennings met his burden of proving he would be a safe and responsible driver. The Secretary, in December 2001, ordered the issuance of a RDP for a period of 12 months. Approximately six months later, Jennings received an RDP.

Before the RDP expired, Jennings, in April 2003, applied to the Secretary for full reinstatement of his driving privileges. In so doing, Jennings requested a formal hearing under section 2—118 of the Illinois Vehicle Code (625 ILCS 5/2—118 (West 2002)).

In support of his request, Jennings submitted an alcohol and drug evaluation, as well as signed documents attesting to Jennings's abstinence and participation in a nontraditional support-recovery program. The evaluation, signed May 2003, stated, "No reported substance use since 9-22-93." It further indicated no changes since the earlier evaluation dated November 16, 1999. The evaluator concluded Jennings was high risk but in remission. A neighbor, by affidavit dated 2003, stated she knew Jennings to be abstinent for 10 years. Jennings's wife reported Jennings "had some relapses in the past but he attend[ed] support meetings and they [helped] him a lot." Jennings's mother-in-law reported she had known Jennings 23 years and saw him daily. She reported, "Each time I see John he is sober and a gentleman."

Jennings proceeded *pro se* and testified at the hearing. According to Jennings, before his last DUI arrest in 2001, he went on a service call to fix a machine in a bar. The driver became intoxicated. Jennings, even though he knew his license had been revoked, decided to drive. He was arrested. The arresting officer told him he pulled him over because he was driving on the wrong side of the road. Jennings stated he took the Breathalyzer test, but the officer refused to show him the results. Jennings received a summary suspension after he was pulled over.

Jennings testified that before his 1988 and 1993 DUI arrests he drank approximately once or twice per week, usually on weekends. He drank "[p]robably a 12-pack if not more," and he drank "to be a part of the crowd." After the 1993 DUI arrest, Jennings quit drinking.

Jennings testified he had relapsed. Between 1993 and 1995, he would be sober for a month and relapse for a short time. His last relapse occurred in approximately 1995. The reason for the relapse was the death of a friend. The relapse lasted one day. Jennings had not consumed a drink since 1995. Jennings did not tell his evaluator about the relapses because she "never asked me no questions like that." Jennings also did not tell the hearing officer at his hearing on the RDP about the relapses: "She never asked me, 'Have you ever had a relapse?'"

Jennings testified he experienced hangovers from drinking. He did not experience blackouts or miss work. He did notice an increased tolerance to alcohol. When Jennings quit drinking, he experienced no withdrawal symptoms.

Jennings refused to say he would never drink again:

"Q. *** Can you guarantee you'll never drink again?

A. No, sir.

Q. Why not?

A. Because I'd be lying.

Q. Why would you be lying?

A. Because I don't know what's going to happen down the future, what miserable things could happen to somebody, you know. I ain't saying I just go to alcohol to make me feel better but it does happen."

Jennings testified to prevent relapses he is to stay away from taverns. Jennings testified his job required him to fix machines from taverns, but most of the time he fixed the machines at the shop. Jennings's interest in his future prevented him from drinking. He wanted to get a college degree. Jennings testified he had attended one year. He earned straight A's and made the honor roll. Jennings testified he could not continue to proceed toward his degree without his license. Jennings also relied on a higher power to prevent relapse.

Jennings did not attend Alcoholics Anonymous (AA). He previously attended AA, but stopped. He was, however, involved in a support group. Jennings admitted being an alcoholic. Jennings also admitted he used marijuana one time in 1993 to get into rehabilitation. Also to get into rehabilitation, Jennings lied and reported drinking 36 cans of beer every day. Jennings testified he did not drive at the present for any other reason than for work or for medical purposes.

The hearing officer issued findings and recommendations. The hearing officer concluded the evidence showed Jennings was an alcoholic, but he provided sufficient evidence showing his involvement in support and recovery. But the hearing officer concluded Jennings did not satisfy his burden of proving his alcohol dependency was adequately addressed and he would be a safe and responsible driver. The hearing officer emphasized a letter from Jennings in which he admitted driving outside the parameters of his RDP and the fact Jennings drove in February 2001, as evidenced by his testimony that he was arrested for DUI. The hearing officer recommended denying Jennings's request. In June 2003, the Secretary adopted the hearing officer's findings and recommendations.

Jennings petitioned the circuit court for administrative review. The Secretary moved to supplement its answer with the letter referenced in the hearing officer's decision. Later, the Secretary submitted an affidavit by the hearing officer. The affidavit explained the hearing officer had the letter at the hearing and relied upon it in rendering her decision. The court allowed the Secretary's motion and denied the petition for administrative review. This appeal followed.

## II. ANALYSIS

Jennings sets forth four arguments on appeal. Jennings argues the circuit court erroneously (1) concluded the Secretary's refusal to

reissue an RDP was proper, (2) permitted the Secretary to consider evidence predating the court's September 2001 decision finding him a safe and responsible driver, (3) allowed the Secretary's motion to supplement the record with an exhibit not before the hearing officer, and (4) approved the Secretary's consideration of an invalid arrest.

■ We first note Jennings's arguments on appeal are improperly centered on the propriety of the circuit court's decision. When a court of review undertakes administrative review, that court reviews the decision of the agency and not the decision of the circuit court. See *Key Outdoor, Inc. v. Department of Transportation*, 322 Ill. App. 3d 316, 320, 750 N.E.2d 709, 712 (2001). We thus review all but one of Jennings's contentions as directed, not toward the decision of the circuit court, but toward that of the Secretary. Jennings's third argument, that the circuit court erred by allowing the Secretary to supplement the record, however, requires review of the court's decision. See 735 ILCS 5/3—111(a)(2) (West 2004) (providing circuit courts with power to make orders deemed appropriate "for the amendment *** of the record of proceedings of the administrative agency"); see also *Biscan v. Village of Melrose Park Board of Fire & Police Commissioners*, 277 Ill. App. 3d 844, 847, 661 N.E.2d 424, 427 (1996).

■ Jennings first argues the Secretary erroneously refused to renew his RDP when the circuit court, in September 2001, ordered the RDP issued. This argument fails for the simple reason Jennings never requested renewal of his RDP. The application for driving privileges completed and signed by Jennings asked for *reinstatement* of full driving privileges. On a preprinted form, Jennings requested a formal hearing to afford him the opportunity to apply for full reinstatement of his driving privileges. He did not apply for an RDP, and he did not check the box seeking full reinstatement or an RDP. Because he did not ask the Secretary to renew his RDP, he has forfeited consideration of this issue. *Carpetland U.S.A., Inc. v. Illinois Department of Employment Security*, 201 Ill. 2d 351, 396-97, 776 N.E.2d 166, 192 (2002) ("As a general rule, issues or defenses not raised before the administrative agency will not be considered for the first time on administrative review").

■ Jennings next contends the Secretary improperly found he did not prove he was a safe and responsible driver. In support, Jennings first argues this finding conflicts with the findings of the circuit court on September 28, 2001, concluding he was a safe and responsible driver and ordering the Secretary to issue him an RDP. Citing one case, *Rauschenberger v. Board of Education, Heritage Community Unit School District No. 8*, 223 Ill. App. 3d 412, 417, 584 N.E.2d 1050, 1054 (1991), Jennings maintains this court may not now consider the

propriety of the 2001 order as it was not appealed. Jennings then maintains the only facts that should have been considered as to Jennings's application are those that occurred after the 2001 decision.

We disagree. In *Rauschenberger*, this court observed "where a higher court renders a final decision and remands to another tribunal and a subsequent appeal is taken from the decision of that tribunal, the new appeal concerns only the question of whether the new disposition conforms to the mandate and the propriety of any decisions on issues left open by the mandate." *Rauschenberger*, 223 Ill. App. 3d at 413, 584 N.E.2d at 1051. To apply *Rauschenberger* to these facts, this court must conclude the issue before the Secretary was the same as before the circuit court in September 2001. In other words, we must conclude Jennings sought an RDP in June 2003 or a renewal of his RDP as issued in 2001. We have addressed and rejected this argument. In April 2003, Jennings sought full reinstatement of his driving privileges, which required an examination of whether he was a safe and responsible driver as of that date. Nothing in his application asked the Secretary to comply with, to amend, or otherwise address the 2001 order. *Rauschenberger* is distinguishable.

Because the issue on review is whether Jennings was a safe and responsible driver as of June 2003 and not whether he was a safe and responsible driver before 2001, Jennings's contention the Secretary could have only considered evidence postdating the 2001 decision fails. First, Jennings provided no citations of authority to support this proposition. He has therefore forfeited consideration of it. See *Elder v. Bryant*, 324 Ill. App. 3d 526, 533, 755 N.E.2d 515, 522 (2001); see also Official Reports Advance Sheet No. 21 (October 17, 2001), R. 341(e)(7), eff. October 1, 2001).

Second, Jennings himself put pre-2001 evidence at issue. Jennings submitted an evaluation that concluded he had been sober since 1993, but then testified to the contrary by admitting he had a number of relapses from 1993 to sometime in 1995. He submitted affidavits of sobriety. One of these affidavits, signed by Jennings's wife, stated Jennings experienced relapses. Another contradicted the false statement Jennings had been abstinent since 1993.

Last, pre-2001 evidence is relevant to the issue of whether Jennings was a safe and responsible driver at the time of his 2003 application and hearing. Not only is it relevant to whether the affidavits and evaluation sufficiently support Jennings's application, but also it is relevant to whether Jennings will abide by the laws applicable to driving privileges.

■ Next, Jennings contends the Secretary erred in determining Jennings violated his RDP. Jennings contends the only evidence of the

violation was a letter not presented to or considered by the hearing officer at the time of the hearing. Jennings maintains the letter surfaced sometime later, and the circuit court erred by allowing the Secretary to supplement the record with the letter.

The issue here is whether the circuit court properly allowed the record to be supplemented with the letter. The circuit court has the power to make any order it deems appropriate to amend the record of the proceedings before the administrative agency. See 735 ILCS 5/3—111(a)(2) (West 2004); see also *Biscan*, 277 Ill. App. 3d at 847, 661 N.E.2d at 427. Given this grant of authority to the circuit court, we will not reverse a decision whether to supplement the record under section 3—111 unless that decision is an abuse of discretion. See *Sahara Coal Co. v. Department of Mines & Minerals*, 103 Ill. App. 3d 115, 120-21, 431 N.E.2d 394, 398 (1981).

The letter at issue, dated March 10, 2003, was received from Jennings by the Breath Alcohol Ignition Interlock Device (BAIID) Unit. In this letter, Jennings admitted driving beyond the restrictions of his RDP. Jennings wrote he, in December 2002, picked up his children, went to the grocery store, and drove "to get my kids on Christmas."

At the hearing on Jennings's application, the Secretary submitted a group exhibit to the hearing officer. The Secretary described the group exhibit, but did not reference the letter. At the hearing, no further mention of this exhibit was made. No specific reference to the letter occurred during the hearing.

The hearing officer relied on the letter in rendering its decision:

"[Jennings] has also driven on restricted driving permits since June 18, 2002. While driving on the restricted driving permits, [Jennings] was subject to the terms and conditions of the Breath Alcohol Ignition Interlock Device (BAIID) Program. [Jennings] was sent a Request for Explanation from the Office of the Secretary of State regarding attempts to tamper with or circumvent the device on February 27, 2003. [Jennings's] response letter to the BAIID unit dated March 10, 2003, indicates that [Jennings] was given permission by Alco Test to bypass the device due to mechanical problems. However, [Jennings's] letter indicates that on December 12, 2002, he had to 'pick up my kids on time,' on December 22, 2002, he was 'at the grocery store in town'; on December 25, 2002, he was driving 'to get my kids'; and on other occasions he had been to the 'drive-up bank'. (Secretary [e]x[.] [No.]3)."

After Jennings petitioned the circuit court for administrative review, the Secretary filed a supplemental answer to add Jennings's letter to the record. According to the supplemental answer, the letter "should have been included in the Record as part of Secretary ***

[e]xhibit [No.] 3." Later, the Secretary filed an affidavit by the hearing officer, which stated the following:

"3. During the hearing, *** the attorney representing the Secretary of State, presented Secretary's [e]xhibit [No.] 3, which contained a letter written by Mr. Jennings to the BAIID Unit.

4. I reviewed the contents of Mr. Jennings' letter, and information contained in this letter was used as part of the basis for denial of driving privileges as a result of the hearing in this matter."

We cannot find an abuse of discretion. In the affidavit, the hearing officer stated the letter was included in exhibit No. 3. Moreover, the hearing officer's decision on Jennings's application not only referred to the letter, but also referred to it as part of exhibit No. 3. These facts corroborate the assertions in the affidavit. The record reveals sufficient facts that support the court's decision to supplement the record.

■ Last, Jennings contends the Secretary erred by considering his February 2001 arrest for driving under the influence of alcohol. Jennings argues two reasons the arrest should not have been considered. Jennings first contends the arrest occurred before the court's September 2001 order and thus was barred by the doctrine of collateral estoppel. Second, Jennings maintains because the arrest was illegal, evidence of his driving was inadmissible in the civil proceeding.

We need not address this argument. The evidence clearly showed Jennings drove without a license in 2001 before he was granted his RDP. It is also apparent the circuit court was not aware of this behavior when it ordered the Secretary to issue an RDP. The collateral estoppel argument is without merit. However, assuming the evidence should not have been considered, ample evidence supports the Secretary's decision to deny Jennings's application for reinstatement of full driving privileges.

The Secretary's decision is entitled to deference. We will not interfere with a decision of an administrative body unless that decision was an arbitrary or capricious exercise of discretion or against the manifest weight of the evidence. *McDougall v. White*, 355 Ill. App. 3d 483, 485-86, 823 N.E.2d 589, 592 (2005). When the record contains evidence fairly supporting the decision of the agency, that decision is not against the manifest weight of the evidence. *McDougall*, 355 Ill. 2d at 486, 823 N.E.2d at 592.

Here, the record supports the Secretary's decision. Jennings sought restoration of driving privileges. He bore the burden of establishing by clear and convincing evidence he was entitled to have those privileges restored. *Conklin v. Ryan*, 242 Ill. App. 3d 32, 36, 610 N.E.2d 751, 755 (1993). Jennings did not meet this burden. He provided an evaluation and affidavits that relied on false information

regarding his sobriety. The evaluation made no mention of the relapses. One affidavit mentioned relapses but did not refer to dates. Another indicated 10 years of sobriety, despite Jennings's contention he had repeated relapses from 1993 to 1995. In addition, Jennings, in his letter to the BAIID Unit, admitted violating the terms of his RDP. Jennings failed to comply with driving regulations and give sufficient evidence of his sobriety. We affirm the Secretary's decision.

## III. CONCLUSION

For the foregoing reasons, we affirm the circuit court's judgment.

Affirmed.

STEIGMANN and MYERSCOUGH, JJ., concur.